# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br>GENERIC PHARMACEUTICALS PRICING<br>ANTITRUST LITIGATION | MDL 2724<br>16-md-2724<br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>INDIRECT RESELLER PLAINTIFF ACTIONS | |
| | CIVIL ACTIONS: |
| *West Val Pharmacy, et al. v. Actavis, et al.* | 17-cv-3822 / 16-PP-27243 |
| *Reliable Pharmacy, et al. v. Actavis et al.* | 19-cv-6044 |

**MEMORANDUM OF LAW IN SUPPORT OF
INDIRECT RESELLER PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS .............................................................................................. iii

TABLE OF AUTHORITIES ......................................................................................... v

I.     INTRODUCTION ............................................................................................. 1

II.    CASE HISTORY ............................................................................................... 2

III.   THE PROPOSED SETTLEMENT .................................................................. 4

       A.   The Settlement Class............................................................................... 4

       B.   The Settlement Benefits .......................................................................... 5

       C.   Settlement Administration and Notice .................................................... 5

       D.   Exclusion (Opt-Out) and Objection Rights............................................. 5

IV.    ARGUMENT ..................................................................................................... 6

       A.   Legal Standard ........................................................................................ 6

       B.   Fairness Prong: The Proposed Settlement Is Fair, Reasonable, and Adequate ............. 7

            1.   Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Class for
                 Settlement Purposes ................................................................. 8

            2.   The Proposed Settlement Is the Product of Arms-Length Negotiations Among
                 Experienced Counsel ................................................................ 10

            3.   The Relief Under the Proposed Settlement Is Adequate ........................................... 11

            4.   The Remaining *Girsh* Factors Are Also Satisfied.................................................... 14

       C.   Certification Prong: It Is Appropriate to Certify the Settlement Class for Purposes of
            the Settlement .................................................................................. 15

            1.   The Elements of Rule 23(a) Are Satisfied in the Present Case ................................ 16

                 i.    Numerosity ..................................................................... 16

                 ii.   Commonality.................................................................... 17

                 iii.  Typicality ....................................................................... 18

                 iv.   Adequacy ........................................................................ 20

2.   The Requirements of Rule 23(b)(3) Are Met in the Settlement Context .................. 22

V.   CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 15, 22

*Atis v. Freedom Mortgage Corporation*, 2018 WL 5801544 ..................................................... 19

*Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) .................................................. 16

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977) ......................................................... 19

*Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) ................................................................. 21

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir.) ........................................................................... 15

*Eisenberg v. Gagnon, cert. denied*, 424 U.S. 946 (1985) ........................................................... 15

*Erheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ......................................................... 6

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ....................................... 19

Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975) ....................................................................... vi, 8

*Grassy v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987) ......... 20

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992) .................................. 20

*Hummel v. Brennan*, 83 F.R.D. 141 (E.D. Pa. 1979) ................................................................. 17

*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) .......................................... 17

*In re Asbestos School Litig.*, 104 F.R.D. 422 (E.D. Pa. 1984) .............................................. 17, 20

*In re Auto. Refinishing Paint Antitrust Litig.*, MDL 1426, 2004 WL 1068807, (E.D. Pa. May 11,
      2004) ................................................................................................................................... 6

*In re Beef Indus Antitrust Litig.*, 607 F.2d 167 (5th Cir. 1979) .................................................. 15

*In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822 (W.D. Pa. 1995) .......................................... 12

*In Re Flat Glass Antitrust Litig.*, 191 F.R.D. 472 (W.D. Pa. 1999) ............................................ 17

*In re General Instruments Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) ............................... 13

*In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79 (E.D. Pa. 2003) ........................ 20

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1999) ........................ 13

*In re NFL Players' Concussion Injury Litig.*, 821 F.3d at 440 ............................................. passim

*In re Payment Card Interchange Fee Antitrust Litig.*, 330 F.R.D. 11, (E.D.N.Y. 2019) ......... 8, 11

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998) ........... 15, 16

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ........................................... 11

*Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359 (N.D. Ohio 2001) ...................................... 13

*Jones v. Commerce Bancorp*, Inc., 2007 WL 2085357, (D.N.J. July 16, 2007) ............................. 7

*Kuhn v. Philadelphia Electric Co.*, 80 F.R.D. 681 (E.D. Pa. 1978) ............................................. 17

*Lake v. First National Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) .................................................. 12

*Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982) ............................................................................... 20

*Mack v. Suffolk Cty.*, 191 F.R.D. 16 (D. Mass. 2000) ................................................................. 17

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ................................................... 16

*Mendez v. Avis Budget Grp., Inc.*, No.11-CV-6537, 2017 WL 5513691 (D.N.J. Nov. 16, 2017) 23

*Myers v. Jani-King of Philadelphia, Inc.*, No. 09-CV-1738, 2019 WL 4034736 (E.D. Pa. Aug.

  26, 2019) .................................................................................................................................... 8

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) .... 18, 19, 22

*Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812 (D.N.J. 2018) .......................... 23

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013) ................................................... 6, 17

*Scott v. University of Delaware*, 601 F.2d 76 (3d Cir. 1979) ...................................................... 19

*Shapiro v. Alliance MMA, Inc.*, No. 17-2583, 2018 WL 3158812, (D.N.J. June 28, 2018) ....... 6, 8

*Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D. Pa. 1977) ....................................... 17

*Stewart v. Abraham*, 275 F.3d 220 (3d. Cir. 2001) ..................................................................... 16

*Thomas v. NCO Fin. Sys., Inc.*, No. 00-CV-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002) ... 6

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ........................................................ 22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................ 18

*Weiss v. Mercedes-Benz of N. Am. Inc.*, 899 F. Supp. 1297 (D.N.J. 1995) ................................ 12

*Weiss v. York Hospital*, 745 F.2d 786 (3d Cir. 1984) ........................................................... 19, 20

*Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975).................................................. 16, 20

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. passim

**Treatises**

7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane,
    Fed. Prac. & Proc. Civ. § 1754 (4th ed.) ........................................................................ 25

The Indirect Reseller Class Representative Plaintiffs ("IRPs," "Plaintiffs" or "Independent Pharmacy & Hospital Plaintiffs"), individually and on behalf of all others similarly situated, respectfully submit this Memorandum in support of their Motion for Preliminary Approval of Class Action Settlement. For the reasons stated below, the Court should grant preliminary approval of the proposed settlement of this class action.

## I.   INTRODUCTION

Plaintiffs, through undersigned counsel, have secured a proposed Settlement Agreement ("Settlement") with Defendant Breckenridge Pharmaceutical, Inc. ("Breckenridge") that contributes $1,000,000 to a Settlement Fund to be ultimately disbursed to a nationwide class of privately-owned independent pharmacies as well as hospitals. The Settlement also provides other benefits to aid Plaintiffs as they continue to litigate against Breckenridge's alleged co-conspirators.

Lead Counsel for the IRPs respectfully submits that the terms of the Settlement are fair, adequate, and reasonable for the Settlement Class and that the requirements for final approval will be satisfied.

In considering preliminary approval, the issue before the Court is whether the proposed Settlement is within the range of what may be found to be fair, adequate, and reasonable. In a future motion, IRPs will request approval of a form of notice to be disseminated to the pharmacies and hospitals comprising the Class. Only after Settlement Class Members have had an opportunity to receive notice and present supporting or opposing evidence at a formal fairness hearing will the parties ask the Court to render a final judgment regarding the fairness of the proposed Settlement.

At this preliminary stage, Plaintiffs respectfully request that the Court enter the proposed Order Granting IRPs' Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), filed as Exhibit C to this motion,  which will: (a) certify the Settlement Class

1

pursuant to the provisions of Fed. R. Civ. P. 23(b)(3), (b) appoint Jonathan W. Cuneo and Peter Gil-Montllor of Cuneo Gilbert & LaDuca, LLP as Settlement Class Counsel; and (c) grant preliminary approval of the proposed Settlement.

## II.    CASE HISTORY

The Defendants in MDL 2724, including Defendant Breckenridge and other generic drug manufacturers and distributors, are alleged to have participated in a conspiracy to arrange price increases for drugs and to allocate customers in order to assign each Defendant manufacturer its "fair share" of business while keeping prices high.  The allegations specific to Breckenridge focus on four drugs out of the more than two hundred generic drugs that are part of the MDL: Propranolol hydrochloride extended release capsules, Methylprednisolone tablets, Cyproheptadine hydrochloride tablets, and regular Estradiol / Norethindrone acetate ("ENA") tablets (the "Breckenridge Drugs at Issue").

Plaintiffs are independent pharmacies and hospitals that purchased and later dispensed these drugs. They allege that, due to Defendants' antitrust violations, they paid prices for these drugs that were illegally inflated above what they would have paid in the absence of any agreement. Plaintiffs' causes of action stem from Section 1 of the Sherman Act as well as the antitrust, consumer protection, and unjust enrichment laws of various states.

In 2016, Plaintiffs began investigating allegations of price-fixing in the generic drug industry.  By August 2017, Plaintiffs had filed actions relating to eighteen generic drugs and had named Breckenridge as a Defendant in an action regarding Propranolol. As investigations continued, Plaintiffs filed additional complaints alleging that the price-fixing conspiracy extended to several dozens more drugs, and named Breckenridge as a Defendant in complaints filed in June

2018 and December 2019. Plaintiffs defeated Defendants' motions to dismiss the August 2017 complaints and the June 2018 complaint.

Beginning in 2017, Plaintiffs developed and served discovery requests and interrogatories and then negotiated custodian lists, search terms, ESI protocols, and other details relating to productions of documents and transactional data as part of a global MDL discovery coordination process. Breckenridge participated in this MDL-wide discovery process along with its co-Defendants but also independently litigated several discovery issues. This process included arguments before Special Master David Marion and Special Discovery Master Bruce Merenstein.

Working together with other plaintiff groups in MDL 2724, Plaintiffs reviewed and analyzed documents generated by Breckenridge's employees, including email correspondence with other manufacturers and distributors of generic drugs, internal emails, pricing spreadsheets, market share reports, and phone logs obtained via subpoenas to phone carriers.

Plaintiffs' counsel have substantial experience in prosecuting class actions and have specific experience litigating class actions focused on horizontal price-fixing of commodities and its effect on downstream small businesses. As part of their ongoing investigation, Plaintiffs' counsel have consulted academic and professional experts in pharmacy payment flows and generic drug pricing, pharmacy data systems, horizontal cartel overcharges, and antitrust econometrics.

Plaintiffs made productions of transactional data regarding their purchases of the Drugs at Issue[1] and, conversely, obtained transactional data from Breckenridge, other Defendants, third parties, and commercial databases in order to estimate the effect of the alleged price-fixing on the members of the Class.

---

[1] "Drugs at Issue" means any formulation of any drug that is the subject of any allegation set forth in MDL No. 2724, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 16-md-2724 (E.D. Pa.); *see also* Settlement Agreement at ¶ 8.

As the litigation progressed through discovery, Plaintiffs and Breckenridge commenced settlement negotiation, taking into account the case's strengths and weaknesses and the progress of the MDL. These negotiations—which included the exchange of information and data, written offers and counter offers, in-person meetings in New York, and numerous telephone conversations—were conducted contemporaneously with the ongoing discovery process. The parties reached fundamental agreement in December 2021 and now propose this Settlement for preliminary approval.

## III.    THE PROPOSED SETTLEMENT

### A.  The Settlement Class

The "Settlement Class" includes all dispensers of drugs (including hospitals and independent pharmacies) in the United States and its territories that purchased one or more of the Drugs at Issue directly from distributor Defendants AmerisourceBergen Corp., Cardinal, Red Oak, Harvard, H.D. Smith, McKesson, Morris & Dickson, or WBAD or their subsidiaries; and all dispensers of drugs (including hospitals and independent pharmacies) in the State Damages Jurisdictions[2] that purchased one or more of the Drugs at Issue from any source other than the manufacturer Defendants from January 1, 2010 through the present.

The Settlement Class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries and affiliates; (b) entities owned in part by judges or justices involved in this action or any members of their immediate families; (c) all pharmacies owned or operated by publicly traded companies, and (d) all hospitals owned or operated by government entities.

---

[2] Alabama, Alaska, Arizona, California, Connecticut, District of Columbia, Delaware, Florida, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Texas, Utah, Vermont, West Virginia, and Wisconsin.

### B.  The Settlement Benefits

The Settlement establishes a Settlement Fund and requires Breckenridge to pay $1,000,000 to that fund within thirty days of the later of (i) entry of an order preliminarily approval this Agreement and (ii) the date Breckenridge is provided with the account number, accountant name, and wiring-transfer information for the Escrow Account. As set forth in the Settlement Agreement, IRPs will endeavor to mitigate the costs of notice by disseminating notice of this settlement with notice of any other settlements reached in this multi-district litigation. Breckenridge will continue to provide discovery that it provides to any other party in the MDL.

### C.  Settlement Administration and Notice

20.     IRPs, at a time to be decided in their sole discretion, and subject to Breckenridge's review and comment, shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Class Members identified by IRPs ("Notice Motion"). The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice. Breckenridge will be given an opportunity to review the proposed notice form and IRPs will in good faith consider any comments or proposed edits from Breckenridge.

### D.  Exclusion (Opt-Out) and Objection Rights

Any member of the Settlement Class wishing to do so may opt out of the Settlement Class by filing a written request before the Opt-Out Deadline to be set by the Court. An opt-out form will be disseminated along with the notice to class members. Any member that files such a request shall be excluded from the Settlement Class and shall have no right to object and no other rights with respect to this settlement

Settlement Class Members may choose to remain in the Class but file a notice of intent to object to the Settlement if they wish to do so. Settlement Class Members who wish to object must

file a notice of intent with the Court, Plaintiffs' Counsel, and Breckenridge's counsel by the date set by the Court. The statement of intent to object should include whether the objector intends to appear at the fairness hearing, a detailed statement of the specific legal and factual bases for each objection and must be signed by the objector.

## IV.   ARGUMENT

### A.  Legal Standard

The Third Circuit has repeatedly "articulated a policy preference favoring voluntary settlement in class actions." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013); *see also Erheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) (judicial policy strongly favors settlement in class actions).

Federal Rule of Civil Procedure 23(e) dictates a two-stage process for judicial approval of a proposed class action settlement. A preliminary approval that triggers notice to the class is followed by a final approval involving a fairness hearing. *See* Fed. R. Civ. P. 23(e)(1)-(2).

Preliminary approval itself has two prongs. Each pertains to the likelihood of ultimate approval once the full Rule 23 process has run its course. "Giving notice is justified" if the court finds it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

This threshold for preliminary approval of a proposed class action settlement is not high, and for good reason: "[p]reliminary approval is not binding." *Shapiro v. Alliance MMA, Inc.*, No. 17-2583, 2018 WL 3158812, at *2 (D.N.J. June 28, 2018). The court need not reach any "ultimate conclusion on the issues of fact and law that underlie the merits of the dispute." *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL NO. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (quoting *Thomas v. NCO Fin. Sys., Inc.*, No. CIV.A. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002)). The primary purpose is to ensure that there are no obvious deficiencies

in the settlement that would preclude final approval. *See Jones v. Commerce Bancorp*, Inc., 2007 WL 2085357, at *2 (D.N.J. July 16, 2007).

### B.   Fairness Prong: The Proposed Settlement Is Fair, Reasonable, and Adequate

Rule 23(e)(2) requires consideration of the following fairness factors at the preliminary approval stage:

(1)   the class representatives and class counsel have adequately represented the class;

(2)   the proposal was negotiated at arm's length;

(3)   the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(4)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts in the Third Circuit must also consider additional factors set forth in *Girsh v. Jepson*:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975) (ellipses omitted).

Due to the significant overlap in these two lists of factors, the analysis below follows the frequently employed framework according to which the "Court first considers the Rules 23(e)(2) factors, and then considers additional [*Girsh*] factors not otherwise addressed by the Rule 23(e)(2) factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019); *Myers v. Jani-King of Philadelphia, Inc.*, No. CV 09-1738, 2019 WL 4034736, at *7 n.4 (E.D. Pa. Aug. 26, 2019) (recognizing that Third Circuit courts apply both the *Girsh* factors and "any factor under Rule 23 that is not addressed by *Girsh*").[3] As detailed below, both the Rule 23(e)(2) factors and the applicable *Girsh* factors weigh in favor of a finding that the settlement is fair, reasonable, and adequate, and should be granted preliminary approval.[4]

### 1. Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Class for Settlement Purposes

Under Rule 23(e)(2)(A), the Court should consider whether the class representative and class counsel adequately represented the class, based on "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment.

---

[3] The Court should consider the factors set forth in both amended Rule 23(e)(2) and *Girsh*. *See* Advisory Committee Note to 2018 amendments to Rule 23(e)(2) (stating that the 2018 amendments are not intended to "displace any factor" set forth in any prior court of appeals ruling governing final approval of class action settlements, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision").

[4] As an initial matter, the second and seventh *Girsh* factors are inapplicable to this case. It would be premature to analyze the second factor, the reaction of the class to the settlement, prior to notice to the class members. *See Shapiro*, 2018 WL 3158812, at *8. Likewise, the seventh *Girsh* factor, the ability of the defendant to withstand a greater judgment, is not implicated here, since this factor is "most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL Players' Concussion Injury Litig.*, 821 F.3d at 440.

In this case, both Plaintiffs and their Counsel are adequate representatives of the Settlement Class. Plaintiffs' interests are in alignment with those of the Settlement Class. Plaintiffs and Settlement Class Members share an overriding interest in obtaining the best claims process and benefits for independent pharmacies and hospitals. As noted above, Plaintiffs have actively participated in representing the interests of the Settlement Class prior to commencement of this matter and throughout this litigation. Furthermore, the Settlement does not grant preferential treatment to Plaintiffs, who will receive the same relief afforded to any other Settlement Class Member. Although the Settlement also contemplates that Plaintiffs may receive a class representative service award, approval of that award will be decided by the Court upon noticed motion. The IRP Class representatives have spent years pursuing the interests of the Settlement Class, including responding to discovery requests, producing documents, and actively engaging with Plaintiffs' Counsel throughout the discovery phase, and are committed to continue litigating the IRP actions against the remaining Defendants. (Cuneo Decl., Ex. B, ¶13.)

With respect to the adequate representation of the settlement class by Plaintiffs' Counsel, Rule 23(e)(2)(B) focuses on "the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment. Here, Plaintiffs' Counsel have experience litigating antitrust class actions and have particular experience in recovering damages for classes of small business in horizontal price-fixing cases such as this one. (Cuneo Decl., Ex. B, ¶¶1, 12.) *See In re NFL Players' Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (plaintiffs' counsel should be "aware of the strengths and weaknesses of their case").

Plaintiffs' Counsel have developed this case and diligently prosecuted these actions on behalf of the Settlement Class, have engaged in substantial discovery, have retained and consulted with experts, and have negotiated with Breckenridge's counsel to craft a deal that fairly

compensates Plaintiffs and Settlement Class Members for their injuries. Plaintiffs' Counsel has a firm "grasp of the legal hurdles that [Plaintiffs] would need to clear in order to succeed" with their claims. *Id.* at 436-439 (with respect to the third *Girsh* factor, "What matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims."). This factor therefore supports granting preliminary approval of the Settlement.

### 2.   The Proposed Settlement Is the Product of Arms-Length Negotiations Among Experienced Counsel

Rule 23(e)(2)(B) directs the Court to consider whether the settlement proposal was negotiated at arm's length. This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment. The settlement process in this case was negotiated at arm's length by counsel experienced in the prosecution, defense, and settlement of complex class actions.

Together, the Rule 23(e)(2)(A) and (B) factors discussed above also encompass the third *Girsh* factor, which takes into account the stage of the proceedings and the amount of discovery completed. *See* Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment ("Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'"). As the Third Circuit has explained, "[t]he third *Girsh* factor captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium*

*Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) (citation omitted). As demonstrated above, this *Girsh* factor also weighs in support of preliminary approval.

### 3.   The Relief Under the Proposed Settlement Is Adequate

Rule 23(e)(2)(C) requires consideration of whether the relief provided for the class is adequate, taking into account several enumerated factors. As explained below, the relief provided to the Settlement Class is more than adequate to satisfy the four relevant areas of concern specified by Rule 23(e)(2)(C): (1) "the costs, risks, and delay of trial and appeal"; (2) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (3) "the terms of any proposed award of attorney's fees, including timing of payment"; and (4) "any agreement required to be identified under Rule 23(e)(3)."[5] This inquiry also subsumes several *Girsh* factors, "including (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee*, 330 F.R.D. at 36. The complexity and expense of this case, in conjunction with the risks Plaintiff faced in maintaining this litigation, weigh heavily in favor of preliminary approval.

With respect to the first factor, Breckenridge has vigorously denied liability and certification of a class from the outset, and Plaintiffs would thus likely have considerable risks proceeding with this litigation. Breckenridge's position has been clear that Plaintiffs cannot prove that it participated in an overarching conspiracy and cannot prove that price increases are attributable to an illegal agreement rather than to unilateral business decisions.  Moreover, Breckenridge is alleged to have engaged in illegal conduct only with regard to the Breckenridge

---

[5] The parties have entered into a side agreement regarding opt-out members of the class, which will be filed with the Court under seal.

Drugs at Issue, and it accordingly occupies a very small position among defendants in the overall MDL in terms of the number of drugs and volume of sales at issue.

While the IRP Class Representatives are confident they could overcome these hurdles, there is a real risk that they may not. Further, continued litigation would be long, complex, and expensive, and a burden to court dockets. *Lake v. First National Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement); *Weiss v. Mercedes-Benz of N. Am. Inc.*, 899 F. Supp. 1297 (D.N.J. 1995) (burden on crowded court dockets to be considered). Continuing this litigation against Breckenridge would entail a lengthy and expensive litigation involving legal and factual issues specific to Breckenridge and not entirely resolvable on an MDL-wide basis, including in particular the limited nature of the allegations against Breckenridge. It is reasonable to expect that all such matters would be sharply disputed and vigorously contested, as they were in settlement negotiations and in Breckenridge's responses to discovery requests. Additionally, Breckenridge would assert various defenses, and a jury trial (assuming the case proceeded beyond pretrial motions) might well turn on class questions of proof making the outcome of such trial uncertain for both parties. Moreover, even after trial is concluded, there would very likely be one or more lengthy appeals. Given this uncertainty, a certain "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

The avoidance of all of these risks contributes significantly to the value and adequacy of the Settlement. *See, e.g.*, *Spann*, 314 F.R.D. at 326 ("The settlement the parties have reached is even more compelling given the substantial litigation risks in this case."). In contrast to the uncertainty and delays inherent in continued litigation, the Settlement provides a guaranteed

benefit to class members. Balancing the complexities of this litigation, the substantial risk, expense, and duration of contained litigation against Breckenridge and likely appeal if Plaintiffs did prevail against Breckenridge at trial, Plaintiffs' Counsel believe the Settlement represents a satisfactory resolution of this litigation against Breckenridge. (Cuneo Decl. ¶¶ 16-17.)

Payment of attorneys' fees and reimbursement of litigation expenses for Settlement Class Counsel will be determined by a separate application to the Court to be filed only after preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).  The Agreement allows Settlement Class Counsel the discretion to file a "Notice Motion." If granted, the Notice Motion will trigger the dissemination of notice to the class members and establish a period for objections. Settlement Class Counsel will be able to file their motion for attorneys' fees and expenses before the expiration of the objection period, thereby providing an opportunity for Settlement Class Member to file objections prior to the final approval hearing.

Finally, there is no reason to doubt the fairness of the proposed Settlement. The Settlement was the result of good faith, arm's length negotiations between experienced and informed counsel on both sides. It is well established that significant weight should be attributed to the belief of experienced counsel that settlement is in the best interests of the class as here. *In re General Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001). There was no collusion between the negotiating parties. The proposed Settlement does not grant unduly preferential treatment to the class representatives or to segments of the Settlement Class, and it does not provide excessive compensation to Plaintiff's counsel. *See Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1999).

Considering the Rule 23(e)(2)(C) factors and the *Girsh* factors subsumed therein, the proposed settlement is fair, adequate, and reasonable.

### 4. The Remaining *Girsh* Factors Are Also Satisfied

The remaining applicable *Girsh* factors—the eighth and ninth factors—concern whether the settlement is in the range of reasonableness in light of the best possible recovery and all the attendant risks of continued litigation. As the Third Circuit has explained, "[i]n evaluating the eighth and ninth *Girsh* factors, we ask 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'" *In re NFL Players' Concussion Injury Litig.*, 821 F.3d at 440 (quoting *In re Warfarin*, 391 F.3d at 538).

Here, the Settlement provides valuable relief to the Settlement Class Members in the form a Settlement Fund that will ultimately be disbursed proportionally to their purchases of the Drugs at Issue. The fund model is appropriate here because Breckenridge is the first MDL 2724 Defendant to settle with the IRP class and the IRPs expect further recoveries, including from Defendants such as Apotex, Heritage, Sandoz, and Taro, who unlike Breckenridge, have each already admitted their participation in price-fixing of generic drugs.[6] Furthermore, Breckenridge will pay initial costs of administering the Settlement. The Settlement thus provides benefits to the Settlement Class, especially when considered in light of the litigation risks.

The Settlement provides meaningful benefits to all settlement class members nationwide. In light of the obstacles to applying either a single state's law or the law of many states in the litigation context, the nationwide Settlement constitutes a significant achievement on behalf of the Settlement Class—an achievement that might not have been obtained had Plaintiffs continued

---

[6] These admissions are contained in statements of facts appended to these Defendants' deferred prosecution agreements with the Department of Justice. The admissions have been incorporated into MDL discovery via interrogatories and requests for admission directed to these Defendants.

litigating. Assessed against the delays and uncertainties associated with trial and appeals, the Settlement provides immediate, substantial financial benefits and falls within the range of reasonableness. Indeed, it is hard to argue that an eventual trial would have guaranteed better relief for IRPs. Given the current MDL schedule, whatever relief might eventually be obtained at trial would not arrive until late 2024 (at the earliest). Because the Settlement is therefore well within the range of reasonableness in light of the best possible recovery and all the attendant risks of continued litigation, the eighth and ninth *Girsh* factors weigh heavily in favor of preliminary approval.

### C.  Certification Prong: It Is Appropriate to Certify the Settlement Class for Purposes of the Settlement

The benefits of the proposed Settlement can be realized only through the certification of a settlement class. The Supreme Court of the United States and the Third Circuit both support the viability of such settlement classes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997); *see also, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998).

In this Circuit, there is a preference for class certification: "The interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." *Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985). In the case of settlements, "tentative or temporary settlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under scrutiny of the trial judge." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R. D. 202, 205 (S.D.N.Y 1995) (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979).

Rule 23 governs the issue of class certification, whether the proposed class is a litigation class or, as here, a settlement class. All the criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes. Thus, a settlement class

should be certified where the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) are satisfied and when one of the three subsections of Rule 23(b) is met.

### 1.   The Elements of Rule 23(a) Are Satisfied in the Present Case

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, the named Plaintiffs must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). *See, e.g.*, *Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998); *Prudential*, 148 F.3d at 308-09; *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975). Here, all four elements easily are satisfied.

### i.   Numerosity

There is no threshold number required to satisfy the numerosity requirement and the most important factor is whether joinder of all the parties would be impracticable for any reason. *Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d. Cir. 2001) (noting that there is no minimum number to satisfy numerosity and observing that generally the requirement is met if the number of plaintiffs exceeds 40); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012) (noting that classes exceeding 40 are sufficiently numerous).

Plaintiffs estimate that there are 24,000 to 29,000 members of the Class, which easily satisfies numerosity, especially because pharmacies and hospitals are geographically dispersed throughout the United States. *In Re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 477 (W.D. Pa.

1999) (numerosity is further supported when there is "significant geographic distribution among the class members.").

    **ii.**    **Commonality**

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Commonality is established "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re NFL Players' Concussion Injury Litig.*, 821 F.3d at 426-27 (quoting *Rodriquez*, 726 F.3d at 382). A common question is one which "arises from a common nucleus of operative facts regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants." *In re Asbestos School Litig.*, 104 F.R.D. 422 (E.D. Pa. 1984). The rule does not require that all questions be common or even that common questions predominate. *Hummel v. Brennan*, 83 F.R.D. 141 (E.D. Pa. 1979); *Kuhn v. Philadelphia Electric Co.*, 80 F.R.D. 681 (E.D. Pa. 1978). Plaintiffs are not required to show that all class members' claims are identical to each other, and any difference between the proposed class members, "while arguably relevant as defenses to liability, do not change the fact that this class action raises the same basic claim and shares common questions of law." *Mack v. Suffolk Cty.*, 191 F.R.D. 16, 23 (D. Mass. 2000). Indeed, a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D. Pa. 1977); s*ee also In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987).

The commonality requirement of subsection (a)(2) is easily met here. The claims of the Class representatives and all Settlement Class Members are premised on the same factual allegations about the "fair share" price-fixing conspiracy and the same causes of action under antitrust and consumer protection laws. On a motion for class certification, the same economic tools would be applied to the same datasets to determine the extent of economic loss Plaintiffs suffered by being illegally overcharged for the drugs they needed to fill prescriptions.

This and the other questions are common to the class, capable of class-wide resolution and "will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re NFL Players' Concussion Injury Litig.*, 821 F.3d at 427 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Given the presence of these common questions central to this litigation, Rule 23(a)(2)'s requirement for the existence of common questions of fact or law has been met here.

### iii.    Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims . . . of the class." The typicality requirement of Rule 23(a)(3) "ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994)). As the Third Circuit described in *Baby Neal*:

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. [Citation omitted.] The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees. [Citation omitted].
>
> Typically entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or. . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.' [Citations omitted.] Commentators have noted that case challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims. [Citation omitted.]

43 F.3d at 57-58.

The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative. *See, e.g.*, *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977).

Typicality does not require that every class member "share identical Claims." *Newton*, 259 F.3d at 182-83. Instead, typicality is satisfied where the named plaintiffs and class members' claims "arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Atis*, 2018 WL 5801544, at *20. The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See, e.g.*, *Falcon*, 457 U.S. at 156-57; *Weiss v. York Hospital*, 745 F.2d 786 (3d Cir. 1984); *Scott v. University of Delaware*, 601 F.2d 76 (3d Cir. 1979).

In the present case, individual variations among Settlement Class Members do not render the claims of the IRP Class Representatives claims atypical of those of the Class. Accordingly, the common issues necessarily share "the same degree of centrality" to the named Plaintiffs' claims such that in litigating the liability issues the named Plaintiffs reasonably can be expected to advance the interests of all absent Settlement Class Members in a favorable determination with respect to each such issue. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members and if based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980

F.2d 912, 923 (3d Cir. 1992); *Grassy v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987).

Even if there are "pronounced factual differences among the plaintiffs, typicality is satisfied as long as there is a strong similarity of legal theories and the named plaintiff does not have any unique circumstances." *In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79, 84 (E.D. Pa. 2003); *see also In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2008) ("[W]hile the Court must ensure the interest of the plaintiffs are congruent the Court will not reject the Plaintiffs' claim of typicality on speculation regarding conflicts that may arise in the future."). Accordingly, the typicality requirement of the rule is satisfied.

### iv.    Adequacy

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." The Third Circuit consistently has ruled that:

> Adequate representation depends on two factors: (a) the Plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the Plaintiffs must not have interests antagonistic to those of the class.

*Weiss*, 745 F.2d at 811 (quoting *Wetzel*, 508 F.2d at 247); *see also Prudential II*, 148 F.3d at 312. These two components are designed to ensure that absentee class members' interests are fully pursued.

### a.   The Class Has Been More Than Adequately Represented by Plaintiffs' Counsel

The existence of the elements of adequate representation are presumed and "the burden is on the defendant to demonstrate that the representation will be inadequate." *Asbestos School Litig.*, 104 F.R.D. at 430 (citing *Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982)).

In the present case, the presumption of adequate representation cannot be rebutted. With respect to the issue of adequacy of counsel, counsel for the IRPs have substantial experience in litigating antitrust class actions. (Cuneo Decl., ¶¶ 1-12). They have served as lead counsel in numerous complex class actions involving allegations of horizontal price-fixing and claims by indirect purchasers of the products at issue in those actions. Plaintiffs' Counsel have and will continue to aggressively litigate this case. As discussed *supra*, Counsel have diligently prosecuted this action and taken significant discovery that has enabled them to negotiate an advantageous settlement on behalf of the class. Plaintiffs' Counsel negotiated the proposed Settlement from a position of knowledge, and as advocates for the entirety of the Settlement Class. The adequacy requirement is satisfied for certification.

### b. The Class Representative's Interests Are Not Antagonistic to Those of the Class

There is nothing to suggest that the representative Plaintiffs have significant interests antagonistic to those of the absent Settlement Class in the vigorous pursuit of claims against Breckenridge. *See Dietrich v. Bauer*, 192 F.R.D. 119, 126 (S.D.N.Y. 2000) ("gauging the adequacy of representation requires an assessment whether the class representatives have interests antagonistic to those of the class they seek to represent"). Here, both the IRP Class Representatives and Settlement Class Members are equally interested in detailing to the Court the manner by which pharmacies and hospitals suffered from increases in the prices of generics drugs from 2010 onwards.

Each of the four mandatory requirements of Rule 23(a) are satisfied here.

### 2. The Requirements of Rule 23(b)(3) Are Met in the Settlement Context

In addition to satisfying Rule 23(a), plaintiffs must show that each putative class falls under at least one of the three subsections of Rule 23(b). Here, the settlement class qualifies under Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *Newton*, 259 F.3d at 187. Common questions must predominate over individual questions. Rule 23(b)(3) does not require that all questions of law or fact be common. In this regard, courts generally focus on the liability issues and if these issues are common to the class, common questions are held to predominate over individual questions.

The predominance requirement of Rule 23(b) entails "ask[ing] whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). In the settlement context, predominance is ordinarily satisfied by claims arising out of the defendant's common conduct. *See, e.g.*, *Sullivan*, 667 F.3d at 299-300 ("[T]he focus is on whether the defendant's conduct was common as to all of the class members."); *Mendez*

22

*v. Avis Budget Grp., Inc.*, No. 11-6537 (JLL), 2017 WL 5513691 (D.N.J. Nov. 16, 2017) ("[I]n cases where it is alleged that the defendant … engaged in a common course of conduct, courts have found that said conduct satisfies the commonality and predominance requirements.").

Here, Plaintiffs raise common issues of fact and law that predominate over any individual issues that might arise. The Settlement Class Members' claims for compensatory relief are founded upon a common legal theory because all Settlement Class Members have an interest in the adjudication of the topmost issues of fact and law in this MDL: whether or not there was an illegal agreement between Breckenridge and any of its direct competitors, and whether those agreements can be found to have formed part of an overarching conspiracy. Once those issues are determined on a class-wide basis, the remaining issues focus on the extent of the damages attributable to such a conspiracy, which is measured by the overcharge that flows downstream between successive levels of purchasers. This measurement is also susceptible to common proof. In fact, modern statistical methods require pooled data from thousands of transactions of Class Member purchases and produce economic models that apply to all Class Members.  To the extent that questions of damages are potentially individual, this would not detract from the predominance of the numerous common issues for settlement purposes, because the "focus of the predominance inquiry is on liability, not damages." *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 845 (D.N.J. 2018) (quotation omitted).

The other requirement of Rule 23(b)(3) that must be satisfied is the superiority requirement (*i.e.*, that a class action suit provides the best way of managing and adjudicating the claims at issue). "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Prudential*, 148 F.3d 316. Considerations of judicial economy underscore the superiority of the

23

class action mechanism in this case. *See Prudential*, 148 F.3d at 316 & n.57. Settlement on a class basis is also superior to individual litigation and adjudication because settlement provides Settlement Class Members with prompt compensation for their damages. By contrast, compensation resulting from litigation is highly uncertain and may not be received before lengthy trial and appellate proceedings are complete. In addition, the Settlement obviously removes the overwhelming and redundant costs of individual trials.

Accordingly, the Settlement Agreement renders a class action superior to other potential avenues of recovery for the IRP Class Representatives and the Settlement Class. Therefore, this case presents the paradigmatic example of a dispute that can be resolved to effectuate the fundamental goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights. 7A Fed. Prac. & Proc. Civ. § 1754 (4th ed.).  In sum, the requirements of Rule 23(b)(3) are satisfied and certification of the proposed class is appropriate.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter the proposed Order: (a) conditionally certifying a class action with respect to the claims against Defendant Breckenridge pursuant to Fed. R. Civ. P. 23(b)(3) for the purpose of effectuating a class action settlement of certain claims against Breckenridge; (b) appointing the undersigned attorneys as Lead Counsel for the Settlement Class, and (c) preliminarily approving the Settlement Agreement with Breckenridge.

Dated: March 27, 2022

Respectfully submitted,

*/s/ Jonathan W. Cuneo*

Jonathan W. Cuneo
Peter Gil-Montllor

**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW, Suite 200
Washington, DC 20016
(202) 789-3960
(202) 789-1819 (fax)
jonc@cuneolaw.com
pgil-montllor@cuneolaw.com

*Lead Counsel*
*for the Indirect Reseller Plaintiffs*